# Wentroth's Appeal.

1. One who performs a contract to deliver lumber, by hiring teams and drivers, but who does no hauling himself, is not a "laborer" within the meaning of the Act of April 9th 1872, and is not entitled to the preference provided by that act.

2. In the contemplation of the act, "laborers" are those who perform with their own hands the contract they make with the employer.

October 24th 1876.  Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Woodward, JJ.  Williams, J., absent.

Appeal from the Court of Common Pleas of *Cambria county*: Of October and November Term 1876, No. 208.

This was the appeal of John D. Wentroth from the decree of the court making distribution of the proceeds of the sheriff's sale of the personal property of Nicholas Wolf.

The case was thus: Wentroth, under two executions, levied on property of Wolf, consisting of a portable steam saw-mill and fixtures, and a lot of lumber, logs, bark, &c.  On the day of the sale, notice was served upon the sheriff by Frederick Snyder, that he claimed a preference out of the proceeds of the sale, which notice was in pursuance of the 1st and 2d sections of the Act of April 9th 1872, Pamph. L. 47, Purd. Dig. 1464, which gives a preference to miners, mechanics, laborers, or clerks, for labor or services rendered, for any period not exceeding six months, immediately preceding the sale of the property of their debtor, and if they give notice in writing of their claims to the officers executing the writ before sale, making it the duty of these officers to pay them out of the proceeds of sale the amount they are entitled to receive, not exceeding $200.  The sheriff proceeded to make the sale and the fund arising therefrom was referred to an auditor for distribution

It appeared before the auditor that Wolf and Frederick Snyder had a written agreement under the terms of which Snyder was to deliver at the steam saw-mill of Wolf all the " hemlock timber now cut down and peeled on the Wentroth tract of land, formerly Rorabaugh's, and on the Pensacola tract," within a certain time, for which he was to receive $2.50 per thousand feet, the payments to be made as stipulated in the agreement.  It seemed that the hauling was not done by Frederick Snyder or with his teams, but by his brother and nephew and several other parties who were employed by Snyder and who used their own teams to haul the lumber.

Michael Snyder, the brother of appellee, testified: " I was carrying this article of agreement for my brother.  I had nine or ten teams employed.  The entries in regard to lumber hauled and the credits given were made by my son George.  I was acting as the agent of Frederick Snyder.  The teams and hands were paid by orders drawn on Wolf, and were to be charged to Frederick Snyder."

[Wentroth's Appeal.]

The auditor decided that Frederick Snyder was entitled to the preference under the act, and awarded him $200 out of the fund.

Wentroth excepted on the ground that Frederick Snyder never performed any part of the labor for which the preference was allowed; that he was a contractor living away from where the work was performed, and never had been present or superintended its performance.

The court dismissed the exception and confirmed the report of the auditor, from which decree this appeal was taken, and the error assigned was in substance that contained in the foregoing exception.

*George M. Reade* and *William H. Sechler,* for appellant.— Unless the rights of the appellee are clearly within the statute he cannot prevail. The labor performed under the written contract was done entirely by third parties and not by the appellee. The act certainly does not contemplate giving such a claimant a preference. It is *pari materia* with previous acts giving preference to laborers, and is intended to give immediate relief to persons of limited means, and not to one who gave no time or attention to the business and who made the contract for speculation merely. The cases cited were: Seider's Appeal, 10 Wright 57, and Sullivan's Appeal, 27 P. F. Smith 107.

*R. L. Johnston,* for appellee.—The laws favoring the rights of labor are of statutory growth, and have always been liberally interpreted. The Mechanics' Lien Law, the creature of our statutes, originally confined to one or two counties, has been made general and has always received a liberal construction. As Pennsylvania became a *mining* state, an act was passed (Act of 2d April 1849, Pamph. L. 337) protecting laborers in mines, and giving them a preference over other creditors. This act originally extended to only seven counties. In 1872 it was re-enacted, made general, and the amount of preference given to laborers, &c., was extended from $50 to $200. This act, so far as it has come before this court, has received such a construction as to give effect to its humane provision: Reed's Appeal, 6 Harris 235; Wade's Appeal, 5 Casey 328; Pennsylvania Coal Co. *v.* Costello, 9 Id. 241. Seider's Appeal, *supra,* upon which the auditor rested his decision, is relied upon by appellant to reverse him. In that case it was decided that contractors who employed eight or ten hands were entitled to the benefits of the act, and also for "horses, carts and drivers."

Mr. Justice SHARSWOOD delivered the opinion of the court, October 30th 1876.

Frederick Snyder, the appellee, entered into a written contract with Nicholas Wolf, the owner of a saw-mill, by which he undertook to deliver at the mill "all the hemlock timber now cut down

[Wentroth's Appeal.]

and peeled on the Wentroth tract of land, formerly Rorabaugh's, and on the Pensacola tract," on or before a certain day, Wolf agreeing to pay him therefor the sum of two dollars and fifty cents per thousand feet. Snyder fulfilled the contract by hiring teams and drivers, but did no hauling himself. The saw-mill, fixtures and other personal property of Wolf having been levied on and sold by the sheriff under two judgments by the appellant, an auditor was appointed to distribute the proceeds. He reported that Snyder was entitled to priority to the extent of two hundred dollars, under the provisions of the Act of April 9th 1872, Pamph. L. 47. Exceptions filed by the appellant were overruled and the report confirmed by the court, and from this decree this appeal was taken.

The only question presented is whether Frederick Snyder was a "miner, mechanic, laborer. or clerk." These and these only are the classes of persons to whose claims priority is secured by the act. " Miner, mechanic or clerk," it is not pretended that he was. Was he a laborer? If he was a laborer it must be conceded that it does not matter in what manner his services were to be compensated, whether by daily wages or by the quantity of lumber delivered. The act does not say wages, but "all moneys that may be due or hereafter become due for labor and services." What class of persons was intended to be comprehended by the word "laborer?" We think this question has been very accurately answered by this court in Daniel Seider's Appeal, 10 Wright 57. "By laborers," says Mr. Justice WOODWARD, in delivering the opinion of the court, "we mean those who perform with their own hands the contract they make with the employer." It is clear that Frederick Snyder does not fall within this description. The act meant to favor those who earned their money by the sweat of their own brows, not those who were mere contractors to have the work done, and whose compensation was the profit they would realize on the transaction. Had Snyder been a chief workman, and employed helpers or assistants, the case might have presented a different question, which it is not necessary here to determine; for it would seem that such helpers would be entitled to priority, and it is very clear that the act did not intend to give a double lien. In such case, if he had paid the assistants, he might be entitled to stand in their shoes by substitution, and recover the balance as compensation agreed upon for his own services. A somewhat analogous question arose under the Mechanics' Lien Laws, and it was decided by this court, in Jones v. Shawhan, 4 W. & S. 257, that one who furnishes nothing but his superintendence and skill as an undertaker had no right to file a lien for anything in pursuance of his contract as such. " It is he," said Chief Justice GIBSON, " who has found the labor or material, and not he who has ordered them, that is entitled to the lien. Were the contractor, as well as the mechanic or material-men, allowed to

[Wentroth's Appeal.]

file, there might be double liens and possibly double recoveries, which the law does not tolerate."

Decree reversed at the costs of the appellee, and record remitted that the proper award of distribution may be made in the court below in conformity with this opinion.